UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
BENJAMIN GONZALEZ,            )
        Petitioner           )
                             )    CIVIL ACTION
        v.                   )    NO. 05-10709-NMG
                             )
UNITED STATES OF AMERICA,     )
        Respondent           )
                             )
```

## Government's Memorandum In Opposition To Petitioner's Motion Under 28 U.S.C. §2255

### INTRODUCTION

The United States of America, by Michael J. Sullivan, United States Attorney, and David Hennessy, Assistant U.S. Attorney, for the District of Massachusetts, hereby files this memorandum in opposition to the petitioner's motion under 28 U.S.C. §2255. Benjamin Gonzalez[1] has filed a petition seeking to vacate or set aside the sentence that this Court imposed on the following grounds: (1) that his counsel was constitutionally ineffective for failing to challenge the criminal history point assigned to his 1998 conviction; (2) that his 1998 conviction was improperly included in the calculation of his sentence. Because Gonzalez's claims are either procedurally barred or substantively meritless, this petition should be dismissed.

---

[1] Defendant's real name is Luis Freddy De La Cruz. Because he was convicted and sentenced under the name Benjamin Gonzalez, this memorandum will refer to him as Gonzalez. The government filed a motion under Federal Rule of Criminal Procedure 36 on June 15, 2004, seeking to add the defendant's true name to the judgment.

## FACTS AND PRIOR PROCEEDINGS

On July 3, 2002, Benjamin Gonzalez pleaded guilty, pursuant to a plea agreement, to an indictment charging him with three counts of possession with intent to distribute, and the distribution of cocaine base, in violation of 18 U.S.C. §841(a)(1), and one count of possession with intent to distribute, and the distribution of cocaine, in violation of 18 U.S.C. §841(a)(1). [D.6][2].

The evidence established that between June 18, 2001, and September 28, 2001, Gonzalez sold a total of 146 grams of cocaine base (commonly known as crack) and 54.3 grams of powder cocaine to a cooperating witness over the course of six transactions. Gonzalez also sold 136.1 grams of cocaine base and 58.2 grams of powder cocaine to an undercover agent over the course of two transactions. [PSR ¶¶13-30]. Two additional cocaine and cocaine base transactions by Gonzalez's associates were also attributed to Gonzalez[3]. [PSR ¶¶19, 26].

Gonzalez's trial attorney filed several objections to the

---

[2]Citations are as follows: "[D.__]" refers to a docket entry, "[Def. Brf.]" refers to the defendant's brief dated March 26, 2005, "[Plea Agr.]" refers to the defendant's plea agreement with the government, "[PSR]" refers to the Presentence Report, and "[PSR Add.]" refers to the Addendum to the Presentence Report. The government annexes hereto, for the convenience of the Court, the transcript of the sentencing hearing ("[Sn. Hg.]") (Exhibit A) and the First Circuit Court of Appeals' decision in the matter of United States v. Benjamin Gonzalez, 02-2581 (Exhibit B).

[3]These amounts did not change Gonzalez's applicable offense level.

Presentence Report. [PSR Add. 1-3]. Among these objections was a challenge to the two criminal history points assigned to Gonzalez's 1997 conviction for attempted criminal sale of a controlled substance. [PSR ¶45]. The probation officer investigated Counsel's objections, and found that Counsel was correct that Gonzalez's 1997 conviction had not resulted in a term of imprisonment, and therefore it should have been counted as one criminal history point, rather than two. [PSR Add. 1]. Counsel did not object to the criminal history point assigned to Gonzalez's 1998 conviction for sexual abuse and endangering the welfare of a child. Gonzalez had pleaded guilty to that charge, and had been sentenced to a conditional discharge. He was also required to register as a sex offender in the state of New York. [PSR ¶46].

On November 19, 2002, this Court held a sentencing hearing. [D.39]. The Court adopted the findings of the Presentence Report and determined that the guideline sentencing range was 135 to 168 months' imprisonment. This Court sentenced Gonzalez to 135 months of imprisonment and five years of supervised release. [Sn. Hg. 17]. Neither the defendant nor the government objected to the sentence imposed by this Court.

On September 8, 2003, Gonzalez's appellate attorney filed in Anders brief, stating that there was no non-frivolous issue to appeal. On March 22, 2004, the First Circuit denied counsel's motion to withdraw and requested that counsel file a brief

addressing the drug treatment and drug testing conditions of supervised release in light of <u>United States v. Melendez-Santana</u>, 353 F.3d 93 (1st Cir. 2003). [Def. Brf. 3]. On January 19, 2005, the First Circuit issued its decision in the matter of <u>United States v. Benjamin Gonzalez</u>, 02-2581. <u>See</u> Exhibit B. The Circuit Court held that its newly-decided case, <u>United States v. Padilla</u>, 393 F.3d 256 (1st Cir. 2005), required vacation of the drug testing condition of supervised release. [<u>Id.</u> at 1]. Consequently, Gonzalez's sentence was vacated to the extent that it improperly delegated the district court's authority to determine the maximum number of drug tests required during Gonzalez's supervised release term. In all other respects, the First Circuit affirmed Gonzalez's conviction and sentence. [<u>Id.</u> at 1-2].

On March 26, 2005, Gonzalez filed a memorandum of law pursuant to 28 U.S.C. §2255 to vacate or set aside his sentence.

ARGUMENT

A. ***Gonzalez has failed to establish a claim of ineffective assistance of counsel.***

Gonzalez claims that he was denied effective assistance of counsel (1) when his trial attorney failed to challenge the criminal history point assigned to his 1998 conviction for sexual abuse and endangering the welfare of a child; and (2) when his appellate attorney failed to raise the same issue. These claims are without merit.

1. **Legal Principles**

4

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court, in reaffirming that the Sixth Amendment guarantees a criminal defendant "effective" assistance of counsel, said, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Court formulated a two-prong test for evaluating counsel's performance. To establish a violation of the Sixth Amendment, a defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Id. at 687. In considering such a claim "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment." Id. at 690 (emphasis added). While a defendant must prove both prongs, id. at 687, Gonzalez can establish neither.

**2. It was objectively reasonable for Counsel not to challenge the criminal history point assigned to the 1998 conviction.**

The plain language of the Sentencing Guidelines required that Gonzalez's 1998 conviction for sexual abuse be included in his criminal history calculation. Since counsel is not obligated to raise a frivolous claim, it was objectively reasonable for

Gonzalez's trial and appellate attorneys not to raise this meritless issue.

On March 31, 1998, Gonzalez pled guilty to sexual abuse and endangering the welfare of a child, a Class A misdemeanor in New York. [PSR ¶46]. As a result of his plea and conviction, Gonzalez was sentenced to a "conditional discharge" for a term of one year. See New York Penal Law §65.05(3) (period of conditional discharge to be three years for felony and one year for misdemeanor or violation).

The Guidelines expressly provide that, as a general matter, a "prior sentence" is counted regardless of whether it includes a term of imprisonment. U.S.S.G. §4A1.1(c) provides that one criminal history point should be added for any "prior sentence." "Prior sentence" is defined in U.S.S.G. §4A1.2(a)(1) as "any sentence previously imposed upon an adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere." Accordingly, contrary to the suggestion in Gonzalez's petition, there is no exclusion for criminal history purposes, for convictions that did not result in the imposition or service of a term of imprisonment.

Given the law, Counsel cannot be blamed for failing to challenge the assignment of a single criminal history point to the 1998 conviction: the undisputed record shows that a sentence of "conditional discharge" was imposed upon Gonzalez's adjudication of guilt on the basis of his guilty plea. [PSR ¶46]. As such, the

6

1998 conviction fell squarely within the definition of "prior sentence," and the requirement in U.S.S.G. §4A1.1, that such a prior sentence be counted. Counsel at both the trial and appellate levels are "under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990).

Nor could Counsel have seriously argued that Gonzalez's 1998 conviction should not be counted as a "sentence of imprisonment," see Def. Brf. at 2, because this Court did not count it as a sentence of imprisonment. This Court attributed only one criminal history point to the 1998 conviction pursuant to §4A1.1(c), rather than the two or three points that a sentence of imprisonment would merit under §4A1.1(a) or (b). See Sn. Hg. at 9-10; see also U.S.S.G. §4A1.1. Since there is no dispute that Gonzalez did not serve a period of imprisonment for his 1998 conviction, Counsel had no reason to challenge it on these grounds. In sum, because Gonzalez's sentence was the result of an admission of guilt and was imposed within 10 years of the instant offense, it was properly counted in Gonzalez's criminal history score. U.S.S.G. §4A1.2(a)(1); §4A1.2(e)(2).

Nor could Counsel have argued that the sexual abuse conviction fell within some category of exclusions. See U.S.S.G. §4A1.2(c)(1)(A) (sentences for minor offenses - such as reckless driving, contempt of court, disorderly conduct, resisting arrest,

and offenses similar to them - are counted only if the sentence was for a term of probation of at least one year or a term of imprisonment of at least thirty days). First, sexual abuse and endangering the welfare of a child is not one of the excludable minor offenses listed in §4A1.2(c)(1). Second, sexual abuse and endangering the welfare of a child is not similar to any of listed offenses. Sexual abuse of a minor under the age of 14 is "categorically more serious" than, and therefore not similar to, Class A misdemeanors like "resisting arrest" or "criminal contempt." See United States v. Martinez-Santos, 184 F.3d 196, 206 (2d Cir. 1999); §4A1.2(c)(1); see generally United States v. Meader, 118 F.3d 876, 885 (1st Cir. 1997) (holding that Maine convictions for statutory rape and unlawful sexual contact with a child under the age of 14 qualified as crimes of violence for the purposes of U.S.S.G. §4B1.1).

Third, even if sexual abuse were similar to the listed offenses, Gonzalez's sentence should still be countable because his one year of "conditional discharge" was functionally equivalent to a "term of probation of at least one year." See United States v. Caputo, 978 F.2d 972, 976-77 (7th Cir. 1992) (holding that a sentence of "conditional discharge" is to be equated with a "term of probation" for purposes of §4A1.2(c)(1)(A)); United States v. Rollins, 378 F.3d 535 (6th Cir. 2004) ("'[C]onditional discharge' and 'unsupervised probation' alike constitute 'probation' for

purposes of §4A1.2(c)(1)"); <u>United States v. Labella-Szuba</u>, 92 F.3d 136, 138 (2d Cir. 1996) ("[E]very circuit that has compared a conditional discharge sentence to a sentence of unsupervised release has found them to be functionally equivalent.").

Because Gonzalez's sexual abuse conviction was the result of an adjudication of guilt, was within 10 years of the instant offense, was categorically more serious than any of the excludable offenses, and resulted in a one-year "conditional discharge" sentence, it was properly assigned one criminal history point. Therefore, it was objectively reasonable for Counsel not to challenge its inclusion, either in the district court or on appeal. As the First Circuit has held, counsel is "under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel." <u>Acha</u>, 910 F.2d at 32.

### 3. In all other respects, Counsel's performance met or exceeded objective standards.

The record shows that Counsel's performance at every step of the proceedings met – if not exceeded – an objective standard of reasonableness. Gonzalez's trial attorney was diligent in protecting Gonzalez's rights, and was fully focused on Gonzales's potential jail exposure. Among other things, Counsel negotiated a plea agreement in which Counsel obtained the government's agreement to forego filing a sentencing enhancement pursuant to 21 U.S.C. §841(b) and §851(a); obtained the government's agreement to recommend sentencing at the low end of the applicable guideline

range; and retained all of Gonzalez's appeal rights. See Plea Agr. ¶¶ 1, 4.   An §851 filing would have increased Gonzalez's jail exposure to a mandatory minimum of twenty years.  See 21 U.S.C. §841(b)(1)(A).   These concessions coupled with the weight of the evidence - including Gonzalez's voice on tape arranging sales of crack cocaine, see Sn. Hg. at 7 - show that Counsel was both a diligent and effective advocate for Gonzalez.

Furthermore, Counsel successfully argued that Gonzalez's 1997 conviction for the attempted sale of cocaine should be assigned one criminal history point, rather than the two points originally assigned in the Presentence Report, because Gonzalez had not been sentenced to a term of imprisonment.  See PSR Add. at 1.  Counsel also ensured that the record reflected the fact that there was no evidence that Gonzalez entered the United States illegally, and successfully requested that the defendant be given credit for time already served since his 2001 arrest.   [Sn. Hg. 20].   Lastly, Counsel highlighted the unfortunate nature of the case for the Court's consideration: "[T]he government was aware that [Gonzalez] was prone to sell drugs as of June 18 of the year 2001. . . . But instead of charging him as of that date, they actually continued to send cooperating witnesses in to purchase more and more drugs. . . . [W]hen they finally arrested him, instead of looking at ten months, he's now looking at . . . better than eleven years." [Sn. Hg. 11-12].  While this argument did not directly affect Gonzalez's

sentence, the Court noted that it was "a legitimate thing for [Counsel] to have explained." [Id. at 12].

Likewise, Gonzalez's appellate attorney's performance met objective standards of reasonableness. After conscientiously reviewing the record and applicable caselaw, Counsel determined that any appeal in the matter would be frivolous. In accordance with Anders v. California, 386 U.S. 738 (1967), Counsel submitted a brief in which he laid out his assessment of the defendant's possible arguments. [Def. Brf. 3]. After Counsel submitted the Anders brief, the First Circuit requested arguments on a single issue only, and that was whether this Court improperly delegated its authority to the Probation Department in allowing the latter to set the number of drug tests. See Exhibit B. Moreover, the Circuit Court based its decision on new caselaw not available to appellate counsel at the time of briefing, United States v. Padilla, 393 F.3d 256 (1st Cir. 2005)[4]. In every other respect, the Court of Appeals affirmed the judgment. [Id. at 1]. Indeed, Gonzalez does not assert that his appellate attorney erred in any way, other than by failing to challenge the criminal history point assigned to the 1998 conviction. [Def. Brf. 2]. However, for the reasons discussed above, appellate Counsel's decision not to raise this frivolous issue was objectively reasonable. In all other

---

[4] Since Gonzalez's appeal, Padilla has been vacated, pending an en banc hearing by the First Circuit. United States v. Padilla, 403 F.3d 780 (1st Cir. 2005).

respects, Counsel's performance on direct appeal was diligent and professional, and Gonzalez's attack on Counsel's performance fails to meet his substantial burden.

## 4. Gonzalez cannot show prejudice.

Even if there was some lapse in Counsels' arguments in the district court or on appeal - and there was not - Gonzalez nevertheless cannot establish that he suffered <u>Strickland</u> prejudice as a result.

Recognizing in <u>Strickland</u> that attorney errors are "as likely to be utterly harmless in a particular case as they are to be prejudicial," the Supreme Court held that to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693, 694; <u>United States v. Ortiz</u>, 23 F.3d 21, 26 (1st Cir. 1994).

Here, Gonzalez cannot make this showing. As discussed above, this Court did not assign Gonzalez's 1998 conviction the two or three criminal history points associated with a "term of imprisonment." <u>See</u> Sn. Hg. at 9-10; U.S.S.G. §4A1.1. Thus, Gonzalez did not suffer prejudice as a result of Counsels' failure to argue that his 1998 sentence did not constitute a "term of imprisonment."

Rather, this Court properly assigned Gonzalez's 1998 conviction for sexual abuse one criminal history point, because it

12

was the result of an adjudication of guilt, was within 10 years of the instant offense, was categorically more serious than any of the excludable offenses listed in §4A1.2(c)(1), and resulted in a one-year "conditional discharge" sentence. [PSR ¶46]. Since the 1998 conviction was correctly counted, Counsels' failure to challenge a one-point assessment for it would not have had any effect on Gonzalez's sentence. <u>Acha</u>, 910 F.2d at 32. In sum, Counsels' decision not to raise this meritless issue did not prejudice Gonzalez, and did not result in an unreliable or fundamentally unfair outcome of the proceeding. <u>Strickland</u>, 466 U.S. at 687.

**B.** <u>*Gonzalez is procedurally barred from collaterally attacking the district court's calculation of his sentence.*</u>

Gonzalez did not object to the criminal history point assigned to his 1998 conviction for sexual abuse at either his sentencing hearing or on direct appeal, but he nevertheless requests collateral relief on the grounds that his prior conviction was improperly counted. [Def. Brf. 2]. Claims that do not allege constitutional or jurisdictional errors can only be brought under 28 U.S.C. §2255 if the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Knight v. United States</u>, 37 F.3d 769, 772 (1st Cir. 1994); <u>quoting</u> <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962).

The First Circuit has held that a claim similar to Gonzalez's, involving a challenge to the number of points attributed to a prior state conviction, could not give rise to collateral relief.

Knight, 37 F.3d at 771-72. The First Circuit reasoned that such a claim neither alleged a constitutional or jurisdictional error, nor did it involve a complete miscarriage of justice. Id. In finding that the claimed sentencing error did not involve a complete miscarriage of justice, the Circuit Court focused on the fact that the defendant was alleging "ordinary errors that could and should have been raised . . . on direct appeal." Id. at 773. The Circuit Court further noted that even if error was committed, it would "fall well short of being a 'complete miscarriage of justice'" because the defendant's eventual sentence was "within the range that would have been imposed even if the district court had not added [the] points to his criminal history score." Id.

The same reasoning applies here. An improper criminal history calculation is an ordinary error that Gonzalez could and should have raised on direct appeal. If the district court had not added the criminal history point for the 1998 conviction, Gonzalez's guidelines range would have been 121 to 151 months[5]. Since Gonzalez's actual sentence of 135 months is within the range that would have been imposed even if this Court had excluded the 1998 conviction, his alleged error falls well short of being a "complete miscarriage of justice" and does not support a collateral attack

---

[5] If Gonzalez's 1998 conviction had been excluded, he would have had three criminal history points, rather than four, which would place him in criminal history category II. Given Gonzalez's offense level of 31, the guidelines range would have been 121 to 151 months.

under §2255.

Furthermore, Gonzalez has neither shown "cause" for his failure to raise the issue at his sentencing hearing and on direct appeal, nor "actual prejudice" resulting from the error.  See Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 170 (1982).  Gonzalez's trial attorney reviewed the Presentence Report in advance of the sentencing hearing, and had an opportunity to file objections in response. [Sn. Hg. 3].  Counsel chose not to object to the criminal point assigned to Gonzalez's 1998 conviction for sexual abuse, even though he successfully objected to one of the criminal points assigned to Gonzalez's 1997 conviction for attempted sale of cocaine.  [PSR Add. 1].  Gonzalez's appellate attorney reviewed Gonzalez's case and determined that there was no reasonable non-frivolous issue to appeal.  [Def. Brf. 3].  As discussed above, Gonzalez's attorneys at trial and on appeal were both diligent and professional, and cannot be said to have been constitutionally ineffective for failing to make a meritless argument.  Because Gonzalez has not shown adequate cause for defaulting his claim, it is procedurally barred.

Even if Gonzalez could establish "cause" for his double procedural default, he was not actually prejudiced by Counsels' failure to object.  To satisfy the "actual prejudice" requirement, a defendant must show that the error "worked to his *actual* and

15

substantial disadvantage." Frady, 456 U.S. at 170. This is a demanding standard; it requires that the defendant carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain-error standard. Id. at 167. Gonzalez has not demonstrated this high level of prejudice. As noted above, this Court properly assessed a single criminal history point based on the sexual abuse conviction. Even if the criminal history point were not added, Gonzalez's current sentence would still fall within the sentencing range he now advocates as correct. Accordingly, here there is neither a fundamental defect which results in a complete miscarriage of justice, nor the type of prejudice that excuses Gonzalez's failure to raise the issue on direct review.

## CONCLUSION

Based on the foregoing, the government respectfully requests that the Court dismiss Gonzalez's §2255 petition since it is either barred as a matter of law or the undisputed facts demonstrate that it is without merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: David Hennessy
    Assistant U.S. Attorney

DATED:    July 14, 2005.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

Benjamin Gonzalez
Inmate No. 80333-038
FCI Ray Brook
P.O. Box 300
Ray Brook, NY 12977

This 14 day of July 2005.

David Hennessy
ASSISTANT UNITED STATES ATTORNEY

17

# EXHIBIT A

1

1          UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA      )
                                   )
5                                  )
     vs.                           )    CR No. 01-40037
6                                  )
                                   )
7    BENJAMIN GONZALEZ             )
     aka Luis DeLaCruz            )
8

9    BEFORE:  The Honorable Nathaniel M. Gorton

10                      DISPOSITION

11

12   APPEARANCES:

13       OFFICE OF THE UNITED STATES ATTORNEY (By: David Hennessy,
         AUSA), 595 Main Street, Worcester, Massachusetts 01608.
14       On behalf of the Government.

15       LAW OFFICE OF RICHARD M. WELSH (By: Richard M. Welsh,
         Esq.), 80 Worcester Street, North Grafton, Massachusetts
16       01536.  On behalf of the Defendant.

17       INTERPRETER:  Luis Szekely

18
                             United States District Court
19                           Courtroom No. 2
                             595 Main Street
20                           Worcester, MA 01608
                             Tuesday, November 19, 2002
21                           3:15 P.M.

22
                        Cheryl Dahlstrom
23                    Official Court Reporter
                  United States District Court
24                 595 Main Street, Room 514
                    Worcester, MA 01608-2076
25        Mechanical Steno - Transcript by Computer

G.Add. 1

**EXHIBIT "A"**

2

P R O C E E D I N G S

1

2      THE CLERK:  Case No. 01-40037, United States vs.

3  Benjamin Gonzalez.  Counsel please note your appearance for

4  the record.

5      MR. HENNESSY:  Good afternoon, your Honor.  For the

6  United States, David Hennessy.

7      THE COURT:  Good afternoon, Mr. Hennessy.

8      MR. WELSH:  Good afternoon, your Honor.  Attorney

9  Richard Welsh for the defendant, who appears on your papers as

10  Benjamin Gonzalez but as has been brought to the Court's

11  attention before his real name is Freddy DeLaCruz.

12      THE COURT:  Yes.  Good afternoon, Mr. Welsh and Mr.

13  Gonzalez or Mr. DeLaCruz.  What do the parties wish the

14  defendant to be addressed as during these proceedings?

15      MR. HENNESSY:  Your Honor, it would be our

16  preference, since he was indicted under the name Benjamin

17  Gonzalez, to use that name.

18      THE COURT:  We will do that unless there is objection

19  by the defendant.

20      MR. WELSH:  It's not his name, Judge.  Whatever you

21  want to do.

22      THE COURT:  Mr. Gonzalez, I understand your actual

23  name is Mr. Luis Freddy DeLaCruz, but we will refer to you as

24  Benjamin Gonzalez.

25      We also have Mr. Szekely here.  If he would identify

3

1    himself for the record.

2              THE INTERPRETER:  Good afternoon, your Honor.  My

3    name is Luis Szekely, S-Z-E-K-E-L-Y.  I'm a U.S. certified

4    interpreter in Spanish.

5              THE COURT:  And Miss Piovoso is here from Probation.

6    Good afternoon to her.

7              MS. PIOVOSO:  Good afternoon, your Honor.

8              THE COURT:  We're here on the sentencing of Mr.

9    Gonzalez, whose real name is DeLaCruz, but we're going to

10   refer to him as Mr. Gonzalez this afternoon.

11             I've received and read Presentence Report.  There are

12   no other filings that I'm aware of.  Are there any that I

13   should be aware of, counsel?

14             MR. HENNESSY:  No, your Honor.

15             MR. WELSH:  I did file some objections.

16             THE COURT:  Yes.  Well, I have the objections to the

17   Presentence Report.  I include those as part of the

18   Presentence Report.

19             MR. WELSH:  Very good.

20             THE COURT:  We'll get to those right now.  There

21   are -- I believe it's four objections to the Presentence

22   Report.  The first one had to do with the New York conviction,

23   and the Presentence Report was amended after that objection

24   was made.  So that has been resolved.

25             The second objection, the defendant objects to the

4

1    inclusion of the incident which occurred on August 15 of 2001,

2    more fully described on Page 3 of the Presentence Report, on

3    the grounds that the defendant was not at the premises in --

4    rather, on August 15, 2001, but that an unidentified male met

5    the cooperating witness and sold him the drugs in question.

6        The probation officer has pointed out that the

7    defendant is accountable for the actions of an accomplish that

8    are in furtherance of the jointly undertaken criminal activity

9    and that it was reasonably foreseeable, in her opinion at

10    least, to the defendant that this transaction was related.

11        Do counsel wish to supplement their argument in any

12    way?  Mr. Welsh, in that regard?

13        MR. WELSH:  I recognize the fact that that's not

14    going to change the offense level.  But I just think that some

15    unidentified male who -- it doesn't say that the goods came

16    from the defendant's home.  The unidentified male may well

17    have had them on his person.  I just don't think that it's

18    appropriate that that one should be included --

19        THE COURT:  There isn't any doubt that the

20    transaction took place at the defendant's home, is there?

21        MR. WELSH:  There's no doubt as to that.  But as to

22    whether or not the drugs came from his home or whether or not

23    the unidentified male had them on his person --

24        THE COURT:  All right.  The government wish to

25    address that issue?

5

1          MR. HENNESSY:  Your Honor, simply, as Probation

2     noted, the unidentified male also informed the cooperating

3     witness that Mr. Gonzalez was in New York at the time, as if

4     to explain the reason that the transaction was being conducted

5     by the unidentified male as opposed to Mr. Gonzalez.  For that

6     reason, also, we believe that Probation is correct.  It's

7     relevant conduct.  It should be included.

8          THE COURT:  Yes.  The Court does overrule that

9     objection and finds that the conduct described in Paragraph 19

10    of the Presentence Report does constitute relevant conduct.

11         There was a third objection involving the December 5,

12    2001, incident, which is more fully described in Paragraph 26

13    of the Presentence Report, at Pages 4 and 5.  This was the

14    seizure of the cocaine as a result of the search of Mr.

15    Rivera's residence.  The defendant was not present at the time

16    of that seizure, but there was an allegation that the

17    defendant was the source of the cocaine that Rivera had.  And

18    the defendant has objected that there was not any --

19    sufficient evidence for this Court to find by a preponderance

20    of the evidence that it should be attributed to him.

21         Is there anything further in that regard that you

22    wish to add, Mr. Welsh?

23         MR. WELSH:  Other than to say that the sole basis for

24    including it would be the uncorroborated statement of Mr.

25    Rivera who obviously had much to gain from making such

6

1    statements.

2    THE COURT:  What about the alleged corroboration that

3    the probation officer points out in her response, that there

4    was an acknowledgment, at least on this telephone

5    conversation, of a $1,400 debt that Mr. Rivera owed to the

6    defendant, that his acknowledgment that he would supply the

7    crack cocaine during that conversation the following day, in

8    fact, showing up to supply it, why aren't those independent

9    evidence of corroboration of that claim?

10    MR. WELSH:  Because we're talking about the drugs

11    that were found in Mr. Rivera's home on that particular day,

12    which was December 5th.  A reference to what was to be done

13    the following day -- the following day was when he was

14    actually arrested and charged with the drugs.  Again, I don't

15    think that the --

16    THE COURT:  What about that, Mr. Hennessy?

17    MR. HENNESSY:  Your Honor, Mr. Gonzalez admitted

18    after his arrest that he sold coke, that Mr. Rivera was one of

19    his customers.  And just to place this in context, what

20    happened after Mr. Rivera was arrested was, he said that Mr.

21    Gonzalez is my source.  In fact, I owe him $1,400.  And that,

22    in part, was the pretext by which Mr. Rivera contacted Mr.

23    Gonzalez that led to the final seizure.

24    Mr. Rivera called Mr. Gonzalez and said, Hey, I have

25    that money that I owe you, the $1,400, and I have a customer

1   who wants to buy a certain quantity of crack and some cocaine

2   if you can get it.  At no time during the recording did Mr.

3   Gonzalez say, I don't know what you're talking about, or, What

4   $1,400, which would all indicate that Rivera's information is

5   accurate.

6           THE COURT:  Yes.  Again, the Court does overrule the

7   defendant's objection and finds that there was evidence

8   independent from simply the claim of Mr. Rivera that Mr.

9   Gonzalez was his source.  That would indicate that, indeed,

10  that was the case.  Therefore, the No. 3 -- the third

11  objection is overruled.

12          Finally, there was a fourth objection, and that was,

13  of course, related to the second and third objections and

14  would have, had I sustained them, reduced the amount of

15  attributable cocaine, crack and otherwise, to the defendant.

16  However, as the defendant has pointed out -- defendant's

17  counsel has pointed out, it would not change the base offense

18  level.  Is that right, Mr. Welsh?

19          MR. WELSH:  That is correct, your Honor.

20          THE COURT:  I agree with that.  So I have now dealt

21  with all of the objections.

22          Are there any other objections to the Presentence

23  Report, Mr. Welsh?

24          MR. WELSH:  As I pointed out to the probation

25  officer, on the very first page of the Presentence Report,

8

1    there's an indication that he's a citizen.

2              THE COURT:  I noted that, too, Mr. Welsh.  And that

3    is a typographical error.

4              MR. WELSH:  Yes.

5              THE COURT:  He should be listed as a citizen of the

6    Dominican Republic, right?

7              MR. WELSH:  Yes.

8              THE COURT:  Thank you.  That being the case, I need

9    to make certain findings that are recommended to me in the

10   Presentence Report, starting at Page 7, wherein it is pointed

11   out that the appropriate -- actually, it's on Page 8, but Page

12   7 refers to it.  The appropriate guideline that we're dealing

13   with here is 2D1.1, and that on the basis of the listing of

14   all of the transactions for which this defendant is being held

15   accountable, a total of 116.5 grams of cocaine powder and

16   226.7 grams of cocaine base are attributable to this

17   defendant; that is, the distribution of that amount of cocaine

18   is attributable to this defendant.

19             Under the conversion tables that are contained in the

20   guidelines, that translates into 4,557.3 kilograms of

21   marijuana.  And, therefore, because that figure falls between

22   3,000 and 7,000 kilograms of marijuana, Subsection (c)(4) of

23   the appropriate guideline applies.  And that means -- that

24   calls for a base offense level of 34.

25             Do counsel agree with those recommendations?

1          MR. WELSH:  The defendant does, your Honor.

2          MR. HENNESSY:  Yes, your Honor.  Just -- it's

3     actually a (3), (c)(3) for base offense level of 34.

4          THE COURT:  Let me check that.  In other words,

5     there's a typographical error in the report to that extent?

6          MR. HENNESSY:  Yes, just that Paragraph (4) should be

7     (3).

8          THE COURT:  Yes.  Let's see.  Yes.  It is Paragraph

9     -- Subparagraph (3) rather than (4), (c)(3).  But (c)(3) does

10    call for a base offense level of 34.

11         MR. HENNESSY:  That's correct, your Honor.

12         THE COURT:  And that's what the Court finds.  The

13    Court finds there are no other adjustments other than that the

14    defendant is entitled to a three-level downward adjustment for

15    acceptance of responsibility; therefore, has a total offense

16    level of 31.

17         Turning to the defendant's criminal history, the

18    Court finds that the defendant was found guilty of an offense

19    in 1997 for attempted criminal sale of a controlled substance

20    in the Supreme Court of the State of New York, for which he

21    received a probationary sentence, and, therefore, receives one

22    criminal history point.

23         He also was found guilty in 1998 of an offense

24    committed in 1997, of sexual abuse, endangerment of the

25    welfare of a child, again in the Supreme Court of the State of

1   New York, for which he receives a second criminal history

2   point.

3        At the time that the instant offense was committed,

4   this defendant was under the criminal justice sentence imposed

5   in 1997 by the Supreme Court of the State of New York.

6   Therefore, two additional criminal history points are awarded.

7   The defendant, then, has four criminal history points and

8   falls in Criminal History Category III.

9        Do counsel agree with those recommendations?

10        MR. HENNESSY:  Yes, your Honor.

11        MR. WELSH:  Yes, your Honor.

12        THE COURT:  The Court so finds.  Therefore, the

13   guideline range for sentencing is 135 to 168 months.  I will

14   hear recommendations for sentencing.  First from the

15   government, Mr. Hennessy.

16        MR. HENNESSY:  Your Honor, with respect to the

17   parties, this was a negotiated disposition.  And in exchange

18   for the defendant's guilty plea, we agreed to recommend the

19   low end of the guideline range, and we do so.

20        THE COURT:  And supervised release is?

21        MR. HENNESSY:  Five-year term of supervised release.

22        THE COURT:  Five years.  Yes, Mr. Welsh.

23        MR. WELSH:  I would request that there be no fine,

24   having in mind that he's looking at such an extended period of

25   confinement.

1    Judge, he's 29 years of age, and he's facing

2    deportation when his sentence is completed.  He's actually

3    been confined under the order of this Court since December 7

4    of 2001 at the Wyatt Detention Center.  And I would ask that

5    he be given credit for that period of time.

6    We do have an agreement to recommend to you the low

7    end, which would be 135 months.

8    The most unfortunate aspect of this case -- and it

9    doesn't change my recommendation or the U.S. Attorney's.  But,

10   to me, the most unfortunate aspect is, if you look at the

11   history of this case, the government was aware that he was

12   prone to sell drugs as of June 18 of the year 2001.  And at

13   that time they send a cooperating witness in there and had the

14   cooperating witness purchase 14 grams of cocaine powder from

15   this defendant.

16   Had he been -- since the government then knew that he

17   was -- that he was prone to sell drugs, had he been arrested

18   at that time and charged, he would have been at a Level 12.

19   Two points for acceptance of responsibility would have been a

20   Level 10.  And Category III, he would have been looking at 10

21   to 16 months.  Because it would have been in Zone C, he would

22   have been looking at, like, five months of actual confinement

23   and probably another five months of home detention.

24   But instead of charging him as of that date, they

25   actually continued to send cooperating witnesses in to

12

1  purchase more and more and more drugs over a period of six

2  months.  So after that first instance, they sent cooperating

3  witnesses or undercover agents in eight more times so that the

4  bottom line was that, six months later, when they finally

5  arrested him, instead of looking at ten months, he's now

6  looking at eleven and a half years or better than eleven

7  years.

8       It wasn't a case of entrapment because, obviously, he

9  was predisposed to sell.  Still, I think it's unfortunate that

10 they waited so long and that they kept sending in more and

11 more cooperating witnesses in order to build up the sentence.

12      THE COURT:  Well, I haven't heard Mr. Hennessy's

13 response, but I imagine that the government at some stage is

14 going to say, yeah, but we wanted to catch the source, and we

15 weren't sure and so on and so forth.  I'm sure there will be

16 an explanation.

17      But how do you respond to that, if the explanation

18 is, yes, we kept doing it so we could get other people

19 involved and clear the streets of other drug distributors?

20      MR. WELSH:  I don't see, from my review of the

21 information that's been given to me, that anybody else was

22 involved except Mr. Rivera.  Again, I'm not arguing that as a

23 departure.

24      THE COURT:  I understand.  I think it's a legitimate

25 thing for you to have explained.

G.Add. 12

13

1              Let me hear from Mr. Hennessy as to what his response

2      to Mr. Welsh's argument is.

3              MR. HENNESSY:   Your Honor, I guess the explanation is

4      so obvious that your Honor hit on it immediately.   And that

5      is, our hope when we do these investigations, that we are

6      going to get more than just the seller in this case.   And

7      fortunately or unfortunately -- it depends on how you look at

8      it -- one of the best ways to compel someone to cooperate with

9      us when the investigation itself does not develop those leads

10     is to have someone in a position where they really need to

11     talk to help themselves out.

12             That was the case here.   We tried to develop leads to

13     find out who the sources for the drugs that Mr. Gonzalez was

14     selling, but that was unsuccessful.   But as your Honor knows,

15     having sentenced many people, it just doesn't do enough for

16     the problem if we just sentence the one seller and the problem

17     continues.

18             In this case, however, one of the things we had going

19     for us with someone like Mr. Gonzalez, who is now facing a lot

20     of time because of the quantity of drugs he sold, is that gave

21     him an incentive to cooperate.

22             Now, Mr. Gonzalez, after he was arrested, spoke only

23     for a minute or two and then refused to tell us about his

24     source of drugs.   That's his choice.   But that is one of the

25     reasons Mr. Gonzalez is facing 135 to 168 months.   This is not

14

1    somebody who, you know, was going to sell drugs once, and he

2    himself would love to get rid of the problem, which is not

3    exactly what Mr. Welsh is saying, but I don't think we're

4    getting an entirely accurate picture from what he's saying

5    either.

6         Mr. Gonzalez, after he was arrested, was invited to

7    cooperate, told us what part of Worcester he got the drugs

8    from and then said, I don't want to talk to you any further

9    about it.  He wants to protect his source.  Good for him.  But

10   then don't sit here and complain that your source put all

11   these drugs in your hands and you turn around and put them on

12   the street.  And now you're here, throwing yourself at the

13   mercy of the court, saying this is such a long sentence for

14   someone who should be doing 12 to 18 months or something like

15   that.

16        THE COURT:  Any response to that, Mr. Welsh?

17        MR. WELSH:  Other than to say perhaps it was not so

18   much a matter of protecting his source as protecting his own

19   safety and health.

20        THE COURT:  All right.  Does the defendant wish to

21   address the Court before sentence is imposed?

22        MR. GONZALEZ:  Yes.

23        THE COURT:  You may do so.

24        MR. GONZALEZ:  I want to say, first, that I beg

25   pardon of the government -- from the government of the United

G.Add. 14

15

1    States for having committed this mistake, of which I am very

2    regretful because I came to have -- to separate from my

3    children and my family.  And I just ask you, please, to have

4    as much compassion as possible.  That's all I want to say.

5    Thank you.

6        THE COURT:  There was one other question about the

7    Presentence Report that I found puzzling, and that is, that it

8    reports in Paragraph 93 that the defendant had adjusted gross

9    income that was reported to the Internal Revenue Service of

10   $30,000, a little more than $30,000 in the year 2001, and,

11   yet, in the paragraph that describes his employment during

12   that year, he advises that he was unemployed and was

13   supporting himself through savings.

14       Is there any explanation that you can give me, Mr.

15   Welsh?

16       MR. WELSH:  I have not seen the tax form.  I don't

17   know if Probation has a copy of it.

18       THE COURT:  Does the Probation have a copy of the tax

19   return?

20       MS. PIOVOSO:  Yes, I do, your Honor.  I have a copy

21   of a printout from the Internal Revenue Service.

22       THE COURT:  Can you explain it to me?  Does it tell

23   us what the source of the income was?

24       MS. PIOVOSO:  If I could have a moment, your Honor?

25       THE COURT:  Sure.

16

1           MS. PIOVOSO:  It's reported as wages, your Honor.

2           THE COURT:  Well, that doesn't get us much farther.

3     Does that help you, Mr. Welsh, to explain it?

4           MR. WELSH:  May I have a moment?

5           THE COURT:  Yes, you may.

6     (Discussion held off the record.)

7           MR. WELSH:  He indicates -- I'm sorry.

8           THE COURT:  Yes, Mr. Welsh.

9           MR. WELSH:  The defendant indicates to me that he was

10    working at a bakery in New York and apparently, if -- it must

11    be a W -- the employer must have reported these wages to the

12    Internal Revenue Service.  I mean --

13          THE COURT:  Well, they're reported as wages, but

14    there's not much detail in the report that we have.  All

15    right.  Thank you, Mr. Welsh.

16          Do counsel know of any reason why sentence ought not

17    to be imposed at this time?

18          MR. HENNESSY:  No, your Honor.

19          MR. WELSH:  No, your Honor.

20          THE COURT:  Please stand, Mr. Gonzalez.  Mr.

21    Gonzalez, before I impose sentence -- this is a long sentence,

22    but the crime that you committed -- and it's not just a

23    mistake.  It's a crime, a very serious crime, involving the

24    distribution of the most deadly kind of drugs in this

25    community that I'm aware of.  Therefore, you are going to go

1     to jail for over 11 years.

2            And there can be no doubt as to the reasons why.  You

3     came into this country apparently illegally, and you are going

4     to be subject to deportation after your sentence.  But we are

5     going to send a message through this sentence and others like

6     it to people who do the same thing you do, to try to impress

7     upon anyone who would distribute drugs of this kind in this

8     country that we're not going to tolerate it and that the price

9     for doing it is going to be a prison sentence that will have a

10    lasting impression.

11            Pursuant to the Sentencing Reform Act of 1984, it is

12    the judgment of this Court that you, Benjamin Gonzalez, also

13    known as Luis Freddy DeLaCruz, are hereby committed to the

14    custody of the Bureau of Prisons, to be imprisoned for a term

15    of 135 months.  This term consists of terms of 135 months on

16    each count, to be served concurrently.

17            Upon release from imprisonment, you shall be placed

18    on supervised release for a term of five years.  This term

19    consists of terms of five years on Counts 2 and 3 and four

20    years on Count 1 and three years on Count 4, all such terms to

21    run concurrently.

22            Within 72 hours of release from custody of the Bureau

23    of Prisons, you shall report in person to the district to

24    which you are released.  While on supervised release, you

25    shall not commit another federal, state or local crime.  You

1    shall refrain from any unlawful use of a controlled substance.

2    You shall submit to one drug test within 15 days of release

3    from imprisonment and at least two periodic drug tests

4    thereafter, as directed by the Probation Office.

5         In addition, you shall comply with the standard

6    conditions that are described in the sentencing guidelines at

7    Section 5D1.3(c) and with the following special conditions:

8    First, you are prohibited from possessing a firearm or other

9    dangerous weapon.

10        Second, you are to participate in a program for

11   substance abuse, as directed by the United States Probation

12   Office, which program may include testing to determine whether

13   you have reverted to the use of alcohol or drugs.  You shall

14   be required to contribute to the costs of services for such

15   treatment based upon your ability to pay or the availability

16   of third-party payment.

17        Third, if ordered deported, you are to leave the

18   United States and not to return without the prior permission

19   of the United States Attorney General.

20        Fourth, you shall use your true name and are

21   prohibited from the use of any alias, false date of birth,

22   false Social Security number, incorrect place of birth and any

23   other pertinent, incorrect, identifying information.

24        It is further ordered that you shall pay to the

25   United States a special assessment of $400, which shall be due

19

1    and payable immediately.

2        Mr. Gonzalez, you have a right to appeal this

3    sentence.  If you choose to do so, you must do so within ten

4    days.  If you cannot afford an attorney, an attorney will be

5    appointed on your behalf.  Do you understand that?  Do you

6    understand that?

7        MR. GONZALEZ:  Yes.

8        THE COURT:  Is there any further business, then, to

9    come before the Court in these proceedings?

10       MR. WELSH:  May I comment very briefly?  I believe

11   your Honor indicated that he may have come into the country

12   illegally.  That's not my recollection from the Pretrial

13   Services investigation.  He was here legally as a permanent

14   resident.  He would still be subject to deportation, but he

15   is --

16       THE COURT:  Maybe I misspoke, Mr. Welsh, but it seems

17   to me that there was evidence in the Presentence Report that

18   there was nothing to corroborate -- that the INS had no record

19   of his ever being granted permanent resident status.  I

20   believe the Presentence Report said that.

21       MR. WELSH:  I think the confusion comes from the fact

22   that they checked him under both names.  I just wanted to

23   bring that to your attention, that my recollection at the

24   Pretrial Services report that went before the magistrate was

25   that it was confirmed that he was here as a permanent

20

1    resident.

2         THE COURT:  Let me just check that.  Paragraph 70

3    says, and I quote, "According to Mr. Gonzalez, in 1995, he

4    entered the United States through Puerto Rico, with legal

5    permanent residency.  (Information received from the

6    Immigration and Naturalization Service reflect no record of

7    the defendant)."  Now -- yes, Miss Piovoso.  You wish to --

8         MS. PIOVOSO:  The defendant was checked under both

9    names, your Honor.

10        THE COURT:  All right.  And nothing was found under

11   these names.  So he may not have illegally entered, but it's

12   not clear that he legally entered.

13        MR. WELSH:  All right.

14        THE COURT:  Anything else?

15        MR. WELSH:  Only to ask that he be given credit for

16   time served from December 7th.

17        THE COURT:  Yes.  He will get credit from the time of

18   his arrest, December 7th of the year 2001.

19        MR. WELSH:  That's correct.

20        THE COURT:  Anything further, Mr. Hennessy?

21        MR. HENNESSY:  Nothing, your Honor.

22        THE COURT:  We are adjourned.

23        THE CLERK:  The defendant is remanded to the custody

24   of the United States Marshal.

25   (Whereupon, at 3:45 p.m. the disposition concluded.)

**G.Add. 20**

21

C E R T I F I C A T E

I, Cheryl Dahlstrom, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 20, constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of United States of America vs. Benjamin Gonzalez, aka Luis Freddy DeLaCruz.

_Cheryl Dahlstrom_

G.Add. 21

# EXHIBIT B

01-40037
USDC/MA
GORTON, J.

# MANDATE

# United States Court of Appeals
## For the First Circuit

———————

No. 02-2581

UNITED STATES,

Appellee,

v.

BENJAMIN GONZALEZ,

Defendant, Appellant.

———————

Certified and Issued as Mandate
under Fed. R. App. R 41.

Richard Cushing Donovan, Clerk

Deputy Clerk

Date: 2/9/05

Before

Boudin, Chief Judge,
Lipez and Howard, Circuit Judges.

———————

JUDGMENT

Entered:  January 19, 2005

While the court erred in failing to set an upper limit on the number of drug tests that <u>probation</u> may order during the term of supervised release, <u>United States</u> v. <u>Melendez-Santana</u>, 353 F.3d 93, 103, 106 (1st Cir. 2003), the court was not required to place an upper limit on the number of tests that the treatment program could order. <u>United States</u> v. <u>Lewandowski</u>, 372 F.3d 470, 471 and n. 2 (1st Cir. 2004). Although defendant's brief has incorrectly focused on the latter, rather than the former, we conclude that the error has not been waived. For the reasons stated in <u>United States</u> v. <u>Padilla</u>, No. 03-1918, slip op. (1st Cir. Dec. 23, 2004), we reject the government's argument that the absence of a court-imposed upper limit does not rise to the level of plain error and conclude that <u>Padilla</u> requires vacation of the drug testing condition of supervised release and a remand for further proceedings consistent with <u>Melendez</u>.

<u>We vacate the sentence to the extent it improperly delegates the district court's authority to determine the maximum number of</u>

**EXHIBIT "B"**

<u>drug tests required during the appellant's supervised release term.</u>
<u>We remand to the district court for further action consistent with</u>
<u>this opinion.  In all other respects, we affirm the conviction and</u>
<u>sentence.</u>

By the Court:

Richard Cushing Donovan, Clerk.

**MARGARET CARTER**

By: _____

        Chief Deputy Clerk.

[cc: David H. Hennessy, AUSA, Dina Michael Chaitowitz, AUSA,
Virginia M. Vander Jagt, AUSA, Geoffrey Dubosque, Esq.]